**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATHAN A. ULERY, on behalf of himself and on behalf of a class of all other persons similarly situated, | |
| Plaintiff, | |
| v. | Case No. _____ |
| WEST MONROE PARTNERS, INC.; KEVIN MCCARTY; TOM BOLGER; GIL MERMELSTEIN; BARBARA DUGANIER; BARBARA BENNETT; MAZEN GHALAYINI; DOUG ARMSTRONG; TOM HULSEBOSCH; SUSAN STELTER; and ARGENT TRUST COMPANY, | |
| Defendants. | |

## COMPLAINT

Plaintiff Nathan A. Ulery, on behalf of himself and similarly situated participants in the West Monroe Partners, Inc. Employee Stock Ownership Plan, and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Nathan A. Ulery ("Plaintiff") brings this suit against Defendants West Monroe Partners, Inc. ("West Monroe" or the "Company"), the Sponsor and Administrator of the West Monroe Partners, Inc. Employee Stock Ownership Plan (the "Plan") on September 20, 2021, when Plaintiff's and the proposed class's Company stock in the Plan was purchased by West Monroe (the "Purchase Transaction"); Kevin McCarty, Tom Bolger, Gil Mermelstein, Barbara

1

Duganier, Barbara Bennett, Mazen Ghalayini, Doug Armstrong, Tom Hulsebosch, and Susan Stelter, members of the Board of Directors of West Monroe (together, the "Board Defendants") at the time of the Purchase Transaction; and Argent Trust Company ("Argent"), the Trustee for the Plan at the time of the Purchase Transaction.

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of West Monroe allocated to his account in the Plan.

3.      This action is brought under Sections 404, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants, including Plaintiff and the class, and other relief, caused by Defendants when they caused the Company stock in Plaintiff's and the class members' Plan accounts to be purchased for less than fair market value in the September 20, 2021 Purchase Transaction rather than at the fair market value paid by MSD Partners, L.P. ("MSD") for Company stock in a transaction announced on October 14, 2021 (the "MSD Transaction").

4.      As alleged below, the Plan has been injured and Plaintiff and the class have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all times, West Monroe was a privately held company. West Monroe adopted the Plan with a retroactive effective date of January 1, 2012, and the Plan purchased West Monroe on December 31, 2012. The Plan was an individual account plan under which a separate individual account was established for each participant, and it was intended to be an employee stock ownership plan (ESOP) designed to invest primarily in the employer securities of West Monroe. Nearly 1,500 current and former employees participated in the Plan at the start of 2021.

6.     Plaintiff and the class members were former West Monroe employees at the time of the Purchase Transaction who were forced in that Transaction to sell their West Monroe stock in their Plan accounts to West Monroe. West Monroe funded the Purchase Transaction; the Board Defendants approved the Purchase Transaction; and Argent helped effectuate and did not prevent the below fair market value Purchase Transaction despite being the fiduciary responsible for valuing Company stock and knowing of the impending multi-stage transaction in which the Plan would cease to be an ESOP and 50% of the outstanding Company stock would be sold to MSD for the true fair market value, which, on information and belief, was about three times higher on a per share basis than what Plaintiff, the class, and the Plan received from West Monroe. West Monroe, the Board Defendants, and Argent were all ERISA fiduciaries who breached duties to the Plan and the class in the Purchase Transaction.

7.     Defendants cashed Plaintiff and the other class members out of their Company stock on September 20, 2021, at a stock value determined by Argent as of December 31, 2020, that is, nearly nine months earlier. Regardless of whether the December 31, 2020 valuation accurately reflected fair market value as of that date, Defendants must have known by September 20, 2021, and certainly much earlier, that West Monroe stock was substantially more valuable because it is utterly implausible that West Monroe's Board of Directors and senior management did not know or at least have a strong indication of transaction price well before the MSD Transaction, expected to soon close in November, was announced in an October 14, 2021 press release.

8.     Neither the Board of West Monroe nor the principals at MSD would have authorized a press release without a high certainty of closing. Investment partnerships such as MSD do not make investments of this nature without months of due diligence and price

3

negotiations. And neither party would have had a high certainty of closing had they not had a firm indication of price. Indeed, only three days after the Purchase Transaction, Plaintiff Ulery was contacted by a person conducting diligence on West Monroe, on information and belief, on behalf of MSD. And senior personnel at West Monroe were alerted to the MSD buy-in on October 5, 2021, more than a week before the press release announcing the deal. An arm's length transaction involving a sophisticated investor is one of the best indications of fair market value. As fiduciaries for Plaintiff and the other Plan participants in the proposed class, Defendants should have realized the proposed redemption price was out-of-date (and Plaintiff does not concede it accurately reflected fair market value even as of December 31, 2020) and far below fair market value, and adjusted the price accordingly.

9.      The timing and complexity of the multi-stage MSD Transaction also shows Defendants must have known at the time of the Purchase Transaction the approximate if not exact amount MSD was to pay for Company stock, and that it far exceeded the stale year-end 2020 valuation. Before 50% of West Monroe's outstanding stock was sold to MSD, Defendants orchestrated an intermediate step in which all the Plan's West Monroe stock was sold to a new, related entity. On September 30, 2021, a new corporation named WMC Bidco, Inc. was incorporated in Delaware. On October 1, 2021, a new corporation named WMC IntermediateCo, Inc. was incorporated in Delaware – its parent was WMC Bidco. On October 5, 2021, Plan trustee Argent caused the Plan's trust to enter into a Stock Purchase Agreement in which the trust sold all its Company stock to WMC IntermediateCo. (the "Intermediate Transaction"). West Monroe was a party to that Stock Purchase Agreement, as approved by the Board Defendants sometime prior to October 5, 2021. Preparation for these extraordinary acts of divesting employees of ownership of West Monroe, ending an ESOP less than nine years after its creation, and forming two new

4

corporations to effectuate an "intermediate" stage of Company ownership between ESOP ownership and the MSD Transaction must have begun before September 20, 2021, and these events would not have happened if the essential terms of the sale to MSD were not assured. Plaintiff and the class were shortchanged and Defendants knew it by September 20, 2021.

10.      Through this action, Plaintiff seeks to enforce his rights under ERISA and the Plan, to recover the losses incurred by the Plan and the class, and/or the improper profits realized by Defendants resulting from their causing, enabling or knowingly participating in prohibited transactions and breaches of fiduciary duty, and equitable relief, including rescission of the Purchase Transaction, surcharge, an accounting for profits, and a constructive trust and/or equitable lien on any funds wrongfully held by Defendants. Plaintiff requests that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan and the class arising from their ERISA violations, Defendants be ordered to disgorge any profits, and any monies recovered for the Plan be allocated to the accounts of the class members.

## JURISDICTION & VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.      This Court has personal jurisdiction over Defendants because certain Defendants reside or may be found in this District, breaches took place in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, Defendants transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

13.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, Defendants reside or may be found in this District, and/or breaches and violations giving rise to Plaintiff's claims took place in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

14.     Plaintiff Nathan A. Ulery is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan on January 1, 2012, because he has a colorable claim for additional benefits as a result of Defendants' breaches and violations. Plaintiff Ulery resides in Arlington Heights, Illinois. He was employed at West Monroe from November 2002 to November 2020 and was Managing Director, Technology Consulting in his final position. He was a member of West Monroe's Board of Directors from January 2010 to December 2019. He was vested by the Plan's terms in shares of West Monroe in his Plan account. On information and belief, Plaintiff Ulery was the largest holder of ESOP stock in the proposed class.

15.     Defendant West Monroe is and at the time of the Purchase Transaction was headquartered in this District at 311 West Monroe Street, 14th Floor, Chicago, Illinois 60606. West Monroe was the Plan's Sponsor and Administrator within the meaning of ERISA § 3(16)(A)-(B), 29 U.S.C. § 1002(16)(A)-(B), at all relevant times. West Monroe was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained. West Monroe also was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Administrator and it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or

disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. West Monroe was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), and a disqualified person under 26 U.S.C. § 4975(e)(2), as an employer whose employees were covered by the Plan and as a fiduciary to the Plan.

16.     The Board Defendants—Kevin McCarty, Tom Bolger, Gil Mermelstein, Barbara Duganier, Barbara Bennett, Mazen Ghalayini, Doug Armstrong, Tom Hulsebosch, and Susan Stelter—were members of the Board of Directors of West Monroe at the time of the Purchase Transaction. The Board Defendants were Plan fiduciaries because the Board of Directors was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained. The Board Defendants were also fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because the Board exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. The Board Defendants were fiduciaries because they exercised fiduciary authority on behalf of West Monroe. The Board Defendants were all parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as directors and fiduciaries, and some were also parties in interest as officers and employees.

17.     Defendant Argent operates as an investment management firm and offers financial planning, trusts, and real estate management services to families and organizations. Argent's principal place of business is 1100 Abernathy Road, 500 Northpark, Suite 550, Atlanta, Georgia 30328. Argent is a division of Argent Financial Group, an independent wealth management firm. Argent Financial Group is headquartered at 500 E Reynolds Dr., Ruston, Louisiana 71270. Argent

was the Trustee of the Plan at the time of the Purchase Transaction. Argent was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

## FACTUAL ALLEGATIONS

18.     Headquartered in Chicago, Illinois, West Monroe bills itself as "a digital consulting firm that was born in technology but built for business—partnering with companies in transformative industries to deliver quantifiable financial value." West Monroe was at all times a privately held company. West Monroe was an S corporation at all relevant times. The Company has approximately 2,000 employees and eight offices across the United States.

19.     West Monroe Partners, LLC was founded in 2002 as a Delaware limited liability company. West Monroe Partners, Inc. was incorporated in Delaware on December 17, 2012, and is a holding company that owns West Monroe Partners, LLC. On December 31, 2012, West Monroe was restructured to become an employee-owned company when 100% of ownership was transferred to the newly-formed Plan's trust. The Plan was made effective retroactively as of January 1, 2012.

20.     The Plan bought one million shares of West Monroe in the 2012 transaction. However, by the time of the 2021 Purchase Transaction it had fewer because in 2019 West Monroe began redeeming shares. The 2020 Plan Form 5500 reports the Plan owned 902,591 shares at year end 2020. Further, West Monroe caused the Capital & Profits Interest Program, adopted in or about the fourth quarter of 2020, and the previous Stock Appreciation Rights Plan, to dilute the Plan's

ownership of West Monroe by allowing leadership to dilute the value of Company stock outside the Plan.

21.     The Plan was a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), subject to ERISA under ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). The Plan was a defined contribution plan and an individual account plan under ERISA § 3(34), 29 U.S.C. § 1002(34), under which a separate individual account was established for each participant.

22.     West Monroe identified the Plan as a leveraged employee stock ownership plan. The Plan was designed to invest primarily in the employer securities of West Monroe. From its formation to present, West Monroe stock was not readily tradable on an established securities market.

23.     In May 2021, West Monroe instructed 147 Plan participants who were former West Monroe employees, including Plaintiff, to make a distribution election in an Election Window running from June 11, 2021 to August 9, 2021. Staying invested in ESOP stock was not an option. The stock of participants who failed to elect a rollover of cash to another plan or individual retirement account (IRA) or a cash payment, or a combination of rollover and cash payment, was to be converted to cash and then invested in a mutual fund in the Plan. The Tentative Distribution Date was Late September or Early October 2021. The 147 participants were eligible to make distribution elections for almost $15 million of vested Company stock in the Plan.

24.     Under the Plan there must be at least one annual valuation of Company stock, which is required for Department of Labor and Internal Revenue Service reporting, conducted as of the last day of the Plan Year, which is December 31. The Plan also allows for additional valuation dates. The Plan's Summary Plan Description (Jan. 2021) ("SPD") explains: "The term 'valuation date' means the last day of the plan year and may include any date or dates deemed necessary or

appropriate by the Plan Administrator for the valuation of the stock held by the trust." The Plan Trustee, assisted by an independent appraiser, must determine the value Company stock in accordance with the Internal Revenue Code and ERISA.

25.     The Company's Board of Directors appoints the Plan's Trustee, which was Argent since in or about mid-2014 including at the time of the 2021 transactions.

26.     In its annual valuation conducted in early 2021 to approximately April, Argent determined the value of Company stock as of December 31, 2020, to be $515.18 per share.

27.     Former employees are not allowed to maintain their investments in Company stock in the Plan. The January 2021 SPD informs participants: "Cash in your account will be distributed as cash and shares will be distributed as shares. In general, distributed shares will be immediately and automatically sold back to the Company – you may not keep them." The Plan describes the distribution of a participant's shares where, as here, the Company is an S corporation: "distribution of the balance credited to a Participant's Company Stock Account shall be made in the form of either (A) cash, or (B) Company Stock, subject to the requirement that the Company Stock be immediately sold to the Company or back to the Trust at a price equal to its fair market value. Fair market value shall be determined under a fair valuation formula, as described in Code Section 409(h)(1)(B), that meets the requirements of Section 5.4 hereunder." Plaintiff and the other class members were informed that in the Purchase Transaction West Monroe was the party funding the distribution of their Plan accounts.

28.     Section 5.4 of the Plan, cited above in the Plan's Form of Distribution provision, provides in relevant part: "In the case of a transaction between the Plan and a disqualified person, value must be determined as of the date of the transaction."

10

29.     Prior to making his election, Plaintiff, as well as the other class members, was informed by West Monroe that he was not being given the choice to keep the West Monroe shares allocated to him in the Plan. For example, a Frequently Asked Questions handout stated: "You will not be allowed to stay invested in ESOP stock . . . . This election is for a full and total lump sum cash distribution of your entire vested balance per your 2020 ESOP statement. . . . If you fail to make a timely election decision, your ESOP shares will be converted into cash and invested in a mutual fund in the ESOP before the end of 2021." West Monroe further informed the class (bold in original): "**We strongly encourage you to make a distribution election now.**"

30.     On or about June 11, 2021, Plaintiff Ulery elected to have his Plan benefit rolled into West Monroe's 401(k) plan.

31.     The Purchase Transaction required, and received on or about September 9, 2021, Board approval.

32.     West Monroe funded the distributions on September 20, 2021 by wire transferring cash to Principal, the Plan's recordkeeper, to cover the purchase of Plan shares, and separately Argent wired the participants' cash balances to Principal. Plaintiff and the class were cashed out of their Company stock in the Plan on the December 31, 2020 valuation of $515.18 per share.

33.     On September 23, 2021, Plaintiff was contacted by a person conducting diligence on West Monroe, on information and belief, on behalf of MSD.

34.     On September 30, 2021, WMC Bidco, Inc. was incorporated in Delaware.

35.     On October 1, 2021, WMC IntermediateCo, Inc. was incorporated in Delaware – its parent was WMC Bidco.

36.     October 5, 2021 is the date of a Stock Purchase Agreement by and among West Monroe Partners, Inc. Employee Stock Ownership Trust ("ESOT"), acting through Argent Trust

Company, not in its corporate capacity, but solely in its capacity as trustee of the ESOT, West Monroe Partners, Inc., WMC IntermediateCo, Inc., and WMC Bidco, Inc., whereby WMC IntermediateCo, Inc. agreed to purchase all of the issued and outstanding shares of West Monroe from the ESOT.

37.     Argent was the independent discretionary trustee for the Plan and its trust in that October 5, 2021 Intermediate Transaction, having sole and exclusive authority to negotiate the terms of the transaction and to authorize the transaction on the Plan's behalf. To meet its ERISA duties of care, skill, prudence and diligence and an exemption to the prohibited transaction rule, Argent had a statutory duty to conduct a good faith investigation and ensure the Plan did not receive less than fair market value for its stock. The Plan likewise required: "Any sale must be made at a price not less than the fair market value of the shares sold as of the date of the sale, as determined by the Trustee based upon a valuation by an independent appraiser. The Trustee may not sell shares of Company Stock in a sale that would be a non-exempt 'prohibited transaction' within the meaning of the Code or ERISA." Argent therefore must have conducted an extensive good faith due diligence and valuation of Company stock prior to October 5, 2021.

38.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. From its role as ongoing Plan Trustee, its role in implementing the Purchase Transaction, and its role as independent discretionary trustee including its investigation in the Intermediate Transaction, Argent had knowledge of the MSD Transaction prior to the Purchase Transaction and knew or should have known that its December 31, 2020 valuation of Company stock did not reflect the fair market value of Company stock as of September 20, 2021.

39.     On October 5, 2021, senior personnel at West Monroe were alerted to the MSD buy-in. This was a large disclosure estimated to have been to more than 150 people, and the news would not have been celebrated in this way if the closing of the MSD Transaction was in doubt.

40.     On October 14, 2021, West Monroe issued a press release announcing the MSD Transaction, stating in relevant part: "Following the investment, which is expected to close in November, MSD Partners will have a 50% ownership stake in West Monroe." West Monroe had an all employee call prior to the issuance of this press release.

41.     On October 14, 2021, Bloomberg reported the deal valued West Monroe at about $2.5 billion.

42.     On November 10, 2021, West Monroe issued a press release announcing it had finalized the investment from MSD. The release noted that with the close of the transaction MSD "holds a 50% ownership stake in West Monroe."

43.     In or about the fourth quarter of 2021, the Plan became a capital accumulation plan and ceased being designed to qualify as an ESOP, and was renamed the "West Monroe Partners, Inc. Frozen Capital Accumulation Plan."

44.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. MSD paid approximately three times more per share in the MSD Transaction than the $515.18 per share price Plaintiff and the class received in the Purchase Transaction. The Company stock price in the MSD Transaction was approximately $1,600 per share.

45.     Defendants are liable to the Plan and the class members under ERISA §§ 409(a), 502(a)(2), and 502(a)(3) for the difference between the price West Monroe paid in the Purchase

Transaction for class members' Company stock in the Plan and the fair market value of Company stock at that time.

46.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Some Board Defendants benefited by Plaintiff and the other class members receiving less than fair market value for their Company stock because such Board Defendants received additional moneys or value in the Plan, the Capital & Profits Interest Program, and/or other plan or program. The Capital & Profits Interest Program adopted in the fourth quarter of 2020 allowed Directors and other leadership to buy into Company stock at the low year end 2019 share price. The value of their shares increased when the class members were cashed out below fair market value without accounting for the rise in Company stock value in 2021 indicated by the MSD Transaction.

47.     Defendants are liable to the Plan for restitution of all profits received by them made through the use of Plan assets and as a result of their breaches of ERISA.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against the Board Defendants and West
Monroe**

48.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

49.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Board Defendants and West Monroe, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here West Monroe stock, with a party in interest, here West Monroe, as took place in the Purchase Transaction.

50.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Board Defendants and West Monroe from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here West Monroe, of any assets of the Plan, as took place in the Purchase Transaction with the transfer of Plan-owned West Monroe stock.

51.     The stock transaction between the Plan and party in interest West Monroe was authorized by the Board Defendants and by West Monroe as Plan Administrator and as a party to the transaction that funded the transaction.

52.     The Board Defendants and West Monroe caused the Plan to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and 406(a)(1)(D) in the Purchase Transaction.

53.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates, *inter alia*, that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account" or "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants."

54.     The Board Defendants and West Monroe dealt with the assets of the Plan for their own interests or for their own accounts and acted on behalf of the Board Defendants and West Monroe in connection with the Purchase Transaction by causing the Plan to sell West Monroe stock in Plaintiff's and the class members' individual accounts below fair market value. This greatly benefited the Board Defendants and West Monroe to the substantial detriment of the Plan, even though the Board Defendants and West Monroe were required to serve the interests of the Plan and its participants and beneficiaries in connection with any such transaction.

55.     The Board Defendants and West Monroe caused and engaged in prohibited transactions in violation of ERISA §§ 406(b)(1) and 406(b)(2) in the Purchase Transaction.

56.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

57.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

58.     The Board Defendants and West Monroe have caused losses to the Plan and the class by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against the Board Defendants and West Monroe

59.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

60.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

61.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye

single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

62.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

63.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

64.    The Board Defendants and West Monroe were required to have initiated an appropriate and independent investigation of the fair market value of West Monroe stock in or about September 2021 in order to fulfill their fiduciary duties, and an appropriate investigation would have revealed that the December 31, 2020 valuation used for the Purchase Transaction did not reflect the fair market value of the West Monroe stock purchased from the Plan by West Monroe on September 20, 2021. The Board Defendants and West Monroe failed to direct the Plan Trustee to conduct a timely and thorough investigation into the value of the stock and further breached their duties by approving the Plan's sale of Company stock below fair market value; funding the Transaction below fair market value; and personally profiting from the below fair market value transaction at the expense of the Plan and the class.

65.    The Board Defendants and West Monroe were required, but failed, to discharge their duties to the Plan with the loyalty, care, skill, prudence, and diligence required under ERISA.

The Board Defendants and West Monroe breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

66.     The Board Defendants and West Monroe were required under the Plan to cause Company stock to be sold to West Monroe only at a price equal to its fair market value. They were required under the Plan to cause the Plan to sell stock to West Monroe only at the value determined as of the date of the transaction. They were required under the Plan to use a valuation based on all the relevant factors for determining the fair market value of the securities. They were required under the Plan to use a valuation in accordance with ERISA and the Internal Revenue Code. Instead, the Board Defendants and West Monroe caused the Plan to sell Company stock for less than fair market value; on a stale value determined as of a date more than eight months prior to the transaction; on a valuation that did not consider highly relevant factors such as the impending sale of Company stock to a private equity firm, and offers and preliminary or final valuations conducted subsequent to the December 31, 2020 valuation; and in violation of ERISA and Code fiduciary and prohibited transaction rules and related governing case law.

67.     The Board Defendants and West Monroe were required, but failed, to discharge their duties to the Plan in accordance with the documents and instruments governing the Plan insofar as such documents and instruments were consistent with Titles I and IV of ERISA. The Board Defendants and West Monroe breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

68.     The Board Defendants and West Monroe have caused losses to the Plan and the class by their breaches of fiduciary duty in amounts to be proved specifically at trial.

## COUNT III

**Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a)**
**Against Argent**

69.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

70.     ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

71.     ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

72.     ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

73.     Argent was the Plan Trustee and thus was a fiduciary with respect to the Plan at the time of the Purchase Transaction.

74.     Given its involvement in the Purchase Transaction shown by its wiring cash to Principal, its legal ownership as Trustee of the Plan's trust of the shares beneficially owned by the class that were purchased by West Monroe, its access to information regarding the MSD Transaction including the first-stage Intermediate Transaction resulting from its status as independent discretionary trustee in the Intermediate Transaction, its supposed role in conducting a necessary Company stock valuation and related due diligence for the Plan for the Intermediate Transaction and/or related second-stage MSD Transaction, and its access to Company personnel

19

and information resulting from its status as ongoing Trustee and fiduciary, Argent knew or should have known of the fiduciary breaches of the Board Defendants and West Monroe in connection with their causing the Plan to sell Company stock in the class members' individual accounts for less than fair market value, and Argent knowingly participated in the Board Defendants and West Monroe's fiduciary breaches, and enabled the Board Defendants and West Monroe's fiduciary breaches by allowing assets in the Trust it controlled to be purchased by the Plan's sponsor and Administrator for less than fair market value and not making reasonable efforts under the circumstances to remedy the breaches such as by bringing the matter to the attention of the Secretary of Labor.

75.     As such, under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), Argent is liable as a co-fiduciary for the Plan's losses and the class's losses resulting from the Board Defendants and West Monroe's fiduciary breaches.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action as a class action under Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the West Monroe Partners, Inc. Employee Stock Ownership Plan (the "Plan") whose West Monroe Partners, Inc. ("West Monroe") stock in the Plan was redeemed in the September 20, 2021 distribution upon the $515.18 per share year-end 2020 valuation, and the beneficiaries of such participants. Excluded from the Class are the defendants, and the legal representatives, successors, and assigns of any such excluded persons.

77.     The Class is so numerous that joinder of all members is impracticable. Although the identities of Class members are unknown to Plaintiff at this time, on information and belief there were 147 members of the class.

20

78.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.    Whether West Monroe, the Board Defendants and Argent were fiduciaries of the Plan;

ii.   Whether West Monroe was a party in interest to the Plan;

iii.  Whether West Monroe and the Board Defendants caused the Plan to engage in prohibited transactions under ERISA by causing the Plan to sell West Monroe stock to a party in interest to the Plan;

iv.   Whether West Monroe and the Board Defendants breached their fiduciary duties by causing the Plan to sell West Monroe stock on September 20, 2021 at the stock price valued as of December 31, 2020;

v.    Whether West Monroe and the Board Defendants caused the Plan to sell West Monroe stock for less than fair market value;

vi.   Whether West Monroe and the Board Defendants breached the Plan by failing to order a valuation of Company stock as of the date of the Purchase Transaction and to cause the Plan to sell the stock in the Class members' individual accounts at that value;

vii.  Whether West Monroe and the Board Defendants engaged in a prohibited transaction under ERISA by dealing with Plan assets in their own interests or for their own accounts;

viii. Whether West Monroe and the Board Defendants engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the Purchase Transaction;

ix.  Whether Argent is liable as a co-fiduciary for breaches of duty by West Monroe and the Board Defendants;

x.  The amount of losses suffered by the Plan and its participants as a result of the ERISA violations; and

xi.  The appropriate relief for Defendants' violations of ERISA.

79.  Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan sold his allocated stock below fair market value, resulting in less money in his account and a smaller distribution from the Plan.

80.  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee-benefits litigation.

81.  Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

82.  The names and addresses of the Class members are available from the Plan or its successor. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.      Declare that Defendant West Monroe and the Board Defendants caused the Plan to engage in and themselves engaged in prohibited transactions and thereby breached their duties under ERISA;

B.      Declare that Defendant West Monroe and the Board Defendants breached their fiduciary duties under ERISA to the Plan and the class members;

C.      Declare that Argent is liable as a co-fiduciary for Defendant West Monroe and the Board Defendants' breaches of fiduciary duty;

D.      Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

E.      Order rescission of the Purchase Transaction;

F.      Impose a constructive trust on all payments received by West Monroe as a result of the Purchase Transaction;

G.      Order that Defendants other appropriate equitable relief to the Plan and the class, including surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

H.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

I.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

J.      Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

K.      Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

L.      Order Defendants to pay prejudgment and post-judgment interest;

M.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

N.      Award such other and further relief as the Court deems equitable and just.

Dated:    February 14, 2022

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
318 W. Adams Street
Suite 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Ryan T. Jenny
Gregory Y. Porter (*pro hac vice to be filed*)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
rjenny@baileyglasser.com
gporter@baileyglasser.com

**IZARD KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice to be filed*)
Douglas P. Needham (*pro hac vice to be filed*)
29 South Main St., Suite 305
West Hartford, CT 06107
Telephone: (860) 492-6292
Facsimile: (860) 492-6290
rizardkrlaw.com
dneedham@ikrlaw.com

*Attorneys for Plaintiff*